TKO FLEET ENTERPRISES, INC., d/b/a Executive Cars & Affiliated Black Car Companies, Plaintiff,

v.

DISTRICT 15, INTERNATIONAL AS- SOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL— CIO, Defendant.

No. 99–CV–1745 (ARR).

United States District Court, E.D. New York.

April 12, 1999.

Roberta C. Pike, Beth S. Chetkof, Pike and Pike, P.C., Bellmore, NY, for plaintiff.

Barbara A. Jaccoma, Ball Livingston, L.L.P., Brooklyn, NY, for defendant.

## OPINION AND ORDER

ROSS, District Judge.

On March 24, 1999, the plaintiff TKO Fleet Enterprises, Inc. ("TKO") filed the instant tort action for intentional interference with business relationships in New York Supreme Court, Queens County. On March 29, 1999, defendant District 15, International Association of Machinists & Aerospace Workers, AFL—CIO ("IAM") removed the action to this court. Before the court is plaintiff's motion to remand the action to state court. For the reasons set forth below, the plaintiff's motion is granted and the action is remanded.

### I. Background

Except where otherwise noted, the following are undisputed facts. Plaintiff TKO is a corporation that provides limousine service to the public through limousine operators who have purchased TKO franchises. *See* Pike Affirm., ¶ 34–35. Defendant IAM is a labor organization currently engaged in organizing drivers in the limousine industry in general and at Executive Cars ("Executive")—a subsidiary of TKO—in particular.[1] *See* Jaccoma Affirm., ¶¶ 11–16.

Apparently, the plaintiff instituted a four percent reduction in fares for certain Executive customers. *See* Jaccoma Affirm., ¶ 16. IAM subsequently circulated a leaflet to Executive drivers notifying them of a meeting to discuss the fare reduction, amongst other labor issues, and describing a plan of action that included contacting Executive customers that receive the reduction. *See id.* at ¶ 18 & Exh. E; Pike Affirm., Exh. B. While IAM contends that

---

1. According to IAM, it has been engaged in a "three year long organizing drive at about 35 companies which provide ... limousine services ... in the New York metropolitan area," Jaccoma Affirm., ¶ 11, and has succeeded in precipitating representation elections at six local limousine companies. *See id.* at ¶ 12. At Last Radio Group Corporation, alleged by IAM to be another subsidiary of TKO, the defendant has apparently been certified by the National Labor Relations Board as the collective bargaining representative of the company's drivers. *See id.* at ¶ 15.

the leaflet was circulated for organizing purposes, *see* Jaccoma Affirm, ¶¶ 16–17, TKO contends that the leaflet was circulated in order to harm the plaintiff's business and encourage the plaintiff's clients to use its competitors. *See* Pike Affirm., ¶¶ 42–45; Pike Reply Affirm., ¶¶ 15–26.

Upon learning of IAM's intention to contact its customers, TKO filed the instant tort action in New York Supreme Court, Queens County. *See* Pike Affirm., ¶ 9 & Exh. C. In its complaint, the plaintiff alleged that IAM had "engaged in a course of conduct during which it approached and/or threatened to approach customers of the plaintiff." *Id.* at Exh. C, ¶ 4. In addition, the plaintiff alleged that IAM approached, annoyed, interfered with, and solicited its customers. *See id.* at Exh.C, ¶ 5–6. According to the complaint, such conduct constituted a tortious interference with the business relations of the plaintiff. *See id.* at Exh. C, ¶ 8. As a result, plaintiff demanded five million dollars in damages and a permanent injunction "barring the defendant from interfering with the business relations of the plaintiff...." *Id.* at Exh. C, Wherefore Clause.

With the complaint, the plaintiff also submitted to the Supreme Court an Emergency Order to Show Cause requesting a temporary restraining order ("TRO") pending a hearing on its request for a preliminary injunction. *See id.* at ¶ 11 & Exh. D. In its TRO application, the TKO requested an order enjoining the defendant from approaching, contacting, or soliciting its clients, from interfering with the business relationships between TKO and its clients, and from intentionally damaging TKO's business reputation. *See id.* at Exh. D. On March 25, 1999, after a hearing attended by counsel for both parties, Supreme Court Justice Posner denied the plaintiff's TRO application and scheduled a full hearing on the preliminary injunction for March 29, 1999. *See id.* at ¶ 19.

However, on March 29, 1999, prior to the preliminary injunction hearing, the defendant filed a Notice of Removal of the case to this court pursuant to 28 U.S.C. § 1441(a). In support of removal, the defendant argued that the complaint arose out of a "labor dispute," as defined by 29 U.S.C. § 107. *See* Notice of Removal, ¶ 6. Moreover, according to defendant, its organizing activities are protected by the First Amendment and 29 U.S.C. § 157. *See id.* Finally, according to defendant, the removal was warranted because the court has original subject matter jurisdiction under federal labor law. *See id.* at ¶ 7.

Pursuant to 28 U.S.C. § 1447, the plaintiff moved this court to remand the case to New York Supreme Court, arguing that the complaint did not present a federal question. The defendant opposed the plaintiff's motion to remand on the basis that (1) plaintiff's state law claims were completely preempted by Sections 7 and 8 of the National Labor Relations Act ("NLRA"), codified at 29 U.S.C. §§ 157 and 158, and (2) plaintiff's state law claims for injunctive relief are preempted by federal labor law. *See* Def.Memo. of Law.

## II. Analysis

A state court action may only be removed to federal court if the action could have been originally filed in federal court. *See* 28 U.S.C. § 1441(a); *Marcus v. AT&T Corp.,* 138 F.3d 46, 52 (2d Cir.1998). Where, as here, neither party has alleged diversity of citizenship, removal requires federal question jurisdiction. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The presence of federal question jurisdiction is determined by application of the "well-pleaded complaint rule," which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* Under the well-pleaded complaint rule, the plaintiff is the "master of the claim" and can generally avoid federal jurisdiction by pleading only state claims even if a federal claim is also available. *See id.; Marcus,* 138 F.3d at 52.

■ A complaint filed in state court that includes only state law causes of action generally may not be removed to federal court based upon a federal preemption defense, *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), even if the defense is anticipated in the plaintiff's complaint and is the only question at issue in the case. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (citing *see Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). In this case, the plaintiff's complaint alleges a state law cause of action for intentional interference with business relationships. *See* Compl.; *cf. 71 Pierrepont Assocs. v. 71 Pierrepont Corp.*, 243 A.D.2d 625, 625–26, 663 N.Y.S.2d 263 (N.Y.A.D.2d Dept.1997). The complaint does not expressly state any cause of action under federal law. *See* Compl. In its memorandum of law, defendant does not argue that a federal question is presented on the face of the plaintiff's complaint. *See* Def.Memo. of Law. Nor could it.

■ Instead, the defendant frames its argument against removal around a corollary to the well-pleaded complaint rule known as the "complete preemption" doctrine. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425; *Marcus*, 138 F.3d at 53. As described by the *Caterpillar* court,

> [o]n occasion ... the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (quoting *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. 1542). As a result, a defendant can properly remove a state court action based on a state law claim when that claim is subject to the complete preemption doctrine. *See Marcus*, 138 F.3d at 53.

■ In this case, the defendant first asserts that the plaintiff's tort claim is completely preempted by §§ 7 and 8 of the NLRA, 29 U.S.C. §§ 157–58. The court does not agree. The Supreme Court has sharply limited the application of the complete preemption doctrine to the narrow range of cases "where 'Congress has clearly manifested an intent' to make a specific action with a particular area removable." *Marcus*, 138 F.3d at 54 (quoting *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542). In particular, the Court has only approved use of the doctrine in three areas: (1) claims under the Labor Management Relations Act by a labor union against an employer under a collective bargaining unit, (2) suits by beneficiaries under the Employment Retirement and Insurance Security Act, and (3) actions involving Indian land grant rights. *See Marcus*, 138 F.3d at 54 (citing relevant cases). The court holds that suits implicating § 7 or § 8 of the NLRA may not be added to that list.

■ In *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that the National Labor Relations Board ("NLRB") has exclusive original jurisdiction over claims of unfair labor practices under §§ 7 and 8 of the NLRA. *See id.* at 245, 79 S.Ct. 773. As a result, as defendant correctly points out, "when an activity is arguably subject to § 7 or § 8 of the [NLRA], the states as well as the federal courts must defer to the exclusive competence of the [NLRB]...." *Id.; see also Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 119 S.Ct. 292, 302, 142 L.Ed.2d 242 (1998) (challenge to action arguably subject to § 7 or § 8 of NLRA is within exclusive jurisdiction of NLRB). The defendant urges the court to assume jurisdiction of this case in order to ensure compliance with the NLRA's mandate of exclusive NLRB jurisdiction over unfair labor practices.

However, in constructing the framework for deciding claims involving unfair labor practices, Congress did not create jurisdiction in the federal courts, but in the NLRB. *See Garmon,* 359 U.S. at 245, 79 S.Ct. 773. Put another way, Congress decided that *both* federal and state courts are preempted from deciding cases arguably subject to § 7 or § 8 of the NLRA. *See id.; see also Marquez,* 119 S.Ct. at 302. If the plaintiff's claim is preempted by the NLRA, it must be decided by the NLRB. *See id.* If the plaintiff's claim is not preempted, it must be decided by the state court. It is both illogical and contrary to elemental principles of federalism to allow removal of this case to federal court solely for the purpose of deciding whether the state court has jurisdiction. *Cf. Caterpillar,* 482 U.S. at 398 n. 13, 107 S.Ct. 2425 (defendant's preemption arguments "are questions that must be addressed in the first instance by the state court in which respondents filed their claims").

■ As the Supreme Court has held, "[a] claim of *Garmon* preemption is a claim that the state court has no power to adjudicate the subject matter of the case, and when ... raised, it must be considered and resolved by the state court." [2] *International Longshoremen's Association, AFL—CIO v. Davis,* 476 U.S. 380, 393, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). While the Supreme Court has not expressly decided the question, lower courts have uniformly held that defendants may not remove state claims to federal court by alleging *Garmon* preemption. *See Hayden v. Reickerd,* 957 F.2d 1506, 1512 (9th Cir. 1991); *Ethridge v. Harbor House Restau-*

*rant,* 861 F.2d 1389, 1397 (9th Cir.1988); *United Food & Commercial Workers Union Local 204 v. Dockery,* 994 F.Supp. 691, 692 (M.D.N.C.1998); *Ramsay v. Steeltech Manufacturing, Inc.,* 895 F.Supp. 225, 228 (E.D.Wis.1995); *Empress River Casino Corp. v. Local Unions No. 9 & 176, Int'l Brotherhood of Electrical Workers,* 1994 WL 262075, at *4 (N.D.Ill.1994); *Pitchford v. Aladdin Steel, Inc.,* 828 F.Supp. 610, 613–14 (S.D.Ill.1993); *Lockport Well & Pump, Inc. v. International Union of Operating Engineers,* 708 F.Supp. 178, 181– 82 (N.D.Ill.1989); *New York v. Local 1115,* 412 F.Supp. 720, 724 (E.D.N.Y.1976). As noted repeatedly in the above cited cases, the proper locus for defendant's *Garmon* preemption defense is in state court. As a result, the court rejects plaintiff's first preemption argument.

■ The defendant's second argument—that plaintiff's claims are completely preempted by federal labor law because the plaintiff requests injunctive relief—deserves little more than cursory attention. The plaintiff does not cite a single case in support of the proposition that a federal court may assume jurisdiction over a state law claim because that claim demands injunctive relief rather than damages. Nor does the plaintiff point the court to any indication that Congress intended a particular labor law to preempt state law claims for injunctive relief. Moreover, this court has, on at least one occasion, rejected preemption arguments in cases involving suits for injunctive relief of labor actions. *See National Labor Relations Board v. New York,* 436 F.Supp. 335, 337 (E.D.N.Y.1977) (citing *New York v. Local 1115,* 412

---

**2.** A common law claim may not be preempted by *Garmon* where "the activity regulated [is] merely [of] peripheral concern of the Labor Management Relations Act ... [or] where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [a court] could not infer that Congress had deprived the State of the power to act." *Garmon,* 359 U.S. at 243–44, 79 S.Ct. 773. There is no reason that a state court is any less qualified than a federal court

to make such a determination. *See generally Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). Moreover, New York courts have demonstrated their capability of addressing *Garmon* preemption defenses in the past. *See, e.g., Wien v. Chelsea Theater Center of Brooklyn,* 66 A.D.2d 741, 741, 411 N.Y.S.2d 316 (1st Dept.1978) (holding action against union for breach of contract to be preempted by § 8 of the National Labor–Management Relations Act).

F.Supp. at 724). As a result, the defendant's second argument also fails.

As discussed above, the plaintiff's complaint does not state a federal cause of action, and the court holds that the claim is not completely preempted by § 7 or § 8 of the NLRA or by federal labor law in general. Consequently, the court grants the plaintiff's motion to remand the case to state court.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to remand the case to state court is granted. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**