**AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 93, Plaintiff,**

v.

**John GORDON, Defendant.**

**Civil Action No. 06–12003–DPW.**

United States District Court, D. Massachusetts.

June 4, 2007.

---

Joseph L. Delorey, Boston, MA, for Plaintiff.

Frank J. Teague, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

DOUGLAS P. WOODLOCK, District Judge.

The employer plaintiff in this case filed a straight-forward state law complaint in state court against its allegedly faithless employee defendant, who, it claims, unlawfully assisted a competitor. As it happens, the two competitors are labor unions and Plaintiff had hired Defendant to advance Plaintiff's interests in the union representation election process. Defendant's alleged faithlessness is said to stem from simultaneously advancing the interests of the competing labor union. The underlying dispute arguably puts the subject matter in the heartland of national labor policy which may ultimately be found to preempt state law claims. Defendant removed the case to this court contending that consequently the dispute should be heard and resolved in a federal forum. Given the continued, if occasionally questioned, vitality of the well-pleaded complaint rule in the

federal courts, *see generally* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex.L.Rev. 1781 (1998), I conclude that this case should be remanded to state court for resolution of the several contentions, including the defense of federal preemption by the National Labor Relations Act ("NLRA").

### I. BACKGROUND

The dispute arises out of Defendant John Gordon's decision to quit his job with Plaintiff American Federation of State, County, and Municipal Employees, Council 93 ("AFSCME") and work as a representative for a competing labor organization, the Massachusetts Nurses Association ("MNA"). Prior to leaving AFSCME, Gordon allegedly persuaded a unit of 550 nurses affiliated with the Salem Hospital ("RN Unit") to file a petition with the NLRB to terminate AFSCME's exclusive dealing contract with their nurses bargaining unit. AFSCME alleges that, in doing so, Gordon engaged in breach of fiduciary duty owed to AFSCME, intentional interference with contractual relations between AFSCME and the RN Unit, and deceit.

AFSCME filed this action in state court in Massachusetts and Gordon timely removed on claiming jurisdiction under 29 U.S.C. § 185 ("For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization ... in the district in which such organization maintains its principal office ....") and 28 U.S.C. § 1337(a) ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."). I assume all facts are as alleged in the complaint and recount them here.

AFSCME is a labor organization with its headquarters in Boston, Massachusetts. Gordon is a resident of Massachusetts and was employed as a staff representative of AFSCME from January 1995 through January 2005. From March 1985 to March 2005, AFSCME was the exclusive bargaining agent for a unit of approximately 550 registered nurses at North Shore Medical Center Salem Hospital in Salem, Massachusetts. As staff representative, Gordon acted as AFSCME's agent in providing services to union members including the Salem Hospital RN Unit.

The most recent collective bargaining agreement between AFSCME and the RN Unit expired September 30, 2004. Gordon's primary duties as staff representative included negotiating a successor collective bargaining agreement. In performing his duties, Gordon gathered information from the leadership of the Local Bargaining Unit of AFSCME, known as "Local No. 683." He then worked with and served as chief spokesperson and technical advisor for the Local No. 683 in negotiating with the RN Unit. Local 683 was seeking a three year successor collective bargaining agreement dealing with the wages, hours, and conditions of employment of the members, the completion of which would have resulted in ongoing dues or agency fees from all RN Unit members to AFSCME. Execution of the successor bargaining agreement would also have precluded another labor organization from filing a petition to the NLRB for an election to change the RN Unit's representation.

In late 2004, Gordon interviewed and secured a commitment for full-time employment as a staff representative with a rival union, the Massachusetts Nurses Association ("MNA"). In order to obtain employment, Gordon made a commitment to MNA that he would help MNA secure a sufficient "showing of interest" so that MNA could petition the NLRB for a new election to challenge AFSCME's status as exclusive bargaining agent for the Salem Hospital RN Unit. Thereafter, Gordon caused or helped to cause negotiations between AFSCME and Salem Hospital for a successor collective bargaining agreement to stall so that there was no successor agreement in place. This was designed to enable the MNA to petition for an NLRB election to challenge AFSCME's exclusive bargaining agent status.

Throughout late 2004 and early 2005, Gordon was aware that AFSCME's status as exclusive bargaining agent for the RN Unit at Salem Hospital was at risk, yet failed to inform AFSCME prior to voluntarily terminating his employment on January 24, 2005. Following termination of his employment with AFSCME, Gordon became employed as a staff representative with the MNA and was assigned by MNA to the RN Unit at Salem Hospital. Thereafter, with Gordon's assistance, MNA petitioned the NLRB for an NLRB-supervised election and defeated AFSCME as the exclusive bargaining representative for the RN Unit at Salem Hospital.

AFSCME filed this claim in state court on October 10, 2006, asserting three state law claims in its complaint: breach of fiduciary duty (Count I); intentional interference with AFSCME's advantageous relationship as an exclusive bargaining representative for the RN Unit at Salem Hospital (Count II); and common law deceit (Count III). After removing the case from state court to this court, Gordon moved for dismissal.

## II. Jurisdiction

Although the parties did not raise the issue in their briefing of the motion, I alerted them before the hearing to be prepared to address whether the well-pleaded complaint rule of the federal courts would

make removal to this court improvident. A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. A close analysis of the complaint demonstrates that it does not allege a controversy over which federal district courts have original jurisdiction.

Diversity jurisdiction under 28 U.S.C. § 1332 is lacking at the most fundamental level; the parties are not diverse in citizenship; AFSCME is a labor organization with its principal office in Boston, Massachusetts and Gordon is a citizen of Massachusetts. Thus, removal jurisdiction is dependent on whether this case "arises under" the laws of the United States for purposes of federal question jurisdiction under 28 U.S.C. § 1331.

Defendant cites to 28 U.S.C. § 1337(a), which gives district courts jurisdiction over claims arising under any Act of Congress regulating commerce, as a basis for federal question jurisdiction. But AFSCME's claims as alleged do not arise under any Act of Congress; all three are standard state common law claims. Defendant also cites to 29 U.S.C. § 185, which gives courts jurisdiction over "any labor organization ... in the district in which such organization maintains its principal office." This provision, however, does not grant subject matter jurisdiction over a cause of action. It is a venue and personal jurisdiction provision that applies if independent subject matter jurisdiction exists. Defendant points to no other statutory authority that would give this court independent subject matter jurisdiction of the claims as alleged. The only arguable federal question for this court would be raised as a *defense* to AFSCME's claims, through the potential that the state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA") [1] or §§ 7–9 of the National Labor Relations Act ("NLRA"). [2]

1. Section 301 of the LMRA reads:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

   29 U.S.C. § 185(a). Whether this provision of the LMRA completely preempts the Plaintiff's claims will be addressed in Section II.A., *infra*.

2. Defendant contends that the alleged conduct is arguably governed by §§ 7–9 of the NLRA.

   Section 7 of the NLRA states that:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

   29 U.S.C. § 157.

   Section 8 reads, in relevant part:

   It shall be an unfair labor practice for a labor organization or its agents—

   (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances.

   29 U.S.C. § 158(b). Defendant also cites § 8(a), which prohibits similar actions on the part of employers of a represented employee, but § 8(b) is the relevant provision in this case because it governs the actions of an agent of a labor organization, such as Gordon.

   Section 9(a) states:

■ It is long settled, however, that federal district courts do not have jurisdiction over a federal question that may be raised in defense to a complaint that alleges purely state-law claims. *See Louisville & Nashville Railroad Co. v. Mottley*, 219 U.S. 467, 486, 31 S.Ct. 265, 55 L.Ed. 297 (1911) (dismissing a contract law claim for lack of federal subject matter jurisdiction even though the defendant's defense to the complaint arose under federal law). Indeed, this general rule applies even where the defense is one of preemption. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("Since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.").

■ There is what the Supreme Court has variously described as an "exception" or "corollary" to the well-pleaded complaint rule known as the "complete preemption" doctrine. *See Beneficial National Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (describing the complete preemption doctrine as an "exception"); *Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. 2841 (describing the doctrine as a "corollary"). On occasion, the Court has concluded that the preemptive force of a federal statutory regime is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The Court has permitted removal jurisdiction in three circumstances where a complaint pleads purely state-law claims: (1) when § 301 of the LMRA preempts the state cause of action, *see Avco v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968),[3] (2) when § 502 of the Employee Retirement Income Security Act ("ERISA") preempts the state-law claim, as in *Metropolitan Life*, and (3) when the National Bank Act completely preempts the state cause of action, *see Beneficial National Bank*, 539 U.S. at 9–11, 123 S.Ct. 2058.

■ Defendant contends that both the LMRA and NLRA preempt the complaint

---

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, that any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining represen-

tative has been given opportunity to be present at such adjustment.
29 U.S.C. § 159(a).

Whether these provisions of the NLRA completely preempt the Plaintiff's claims will be discussed in Section II.B. *infra*.

3. It must be noted that whether the complete preemption doctrine can be harmonized comfortably with the well-pleaded complaint rule remains controversial. Justice Scalia argued relatively recently that by creating the complete preemption corollary/exception, the *Avco* court "failed to clarify the analytic basis for its unprecedented act of jurisdictional alchemy." *See Beneficial National Bank v. Anderson*, 539 U.S. 1, 14, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (Scalia, J., dissenting).

in this case. Under the Supreme Court jurisprudence of complete preemption, if the LMRA preempts a state law claim then the claim "arises under" federal law and removal to federal court is appropriate. Accordingly, I reach the merits of whether Defendant may assert a preemptive LMRA defense for the purpose of determining whether there is subject matter jurisdiction in this case. By contrast, the NLRA has not been added to the Supreme Court's short list of extraordinary statutory regimes that can completely preempt a state law claim so as to bring it within the original jurisdiction of the federal courts. Because the NLRA could not support removal here, I do not reach the merits of whether a NLRA defense is available.

## A. LMRA PREEMPTION

■ Defendant argues that the complete preemption by § 301 of the LMRA provides a basis for removal jurisdiction, as in *Avco*. In *Avco Corp. v. Machinists,* the plaintiff filed a claim in state court to enjoin the defendants from violating a no-strike provision in a collective bargaining agreement. The Court held that removal jurisdiction was proper when "[t]he heart of the [state-law] complaint [was] a ... clause in the collective bargaining agreement," *Avco Corp.,* 390 U.S. at 558, 88 S.Ct. 1235.

*Avco* does not control this case because Plaintiff's claims do not fall within the scope of § 301 of the LMRA. None of the state claims alleged require an interpretation or application of a collective bargaining agreement. Even the claim that Gordon intentionally interfered with AFSCME's contractual relations with the RN Units fails to implicate § 301 because AFSCME need not prove that a collective

bargaining agreement existed in order to prevail. AFSCME does not allege that Defendant interfered with an existing collective bargaining agreement whose provisions might need interpretation, but rather that Defendant intentionally interfered with future possible advantageous relations between AFSCME and the RN Units. Thus, the parties' dispute does not require the decisionmaker to base resolution on the fact that a collective bargaining agreement existed, let alone to construe any of its contents.

Even if AFSCME had alleged that Gordon had interfered with a *current* contract, § 301 complete preemption would be questionable because interpretation of the contract would not be at the heart of the claim in this case. *See Franchise Tax Board,* 463 U.S. at 25 n. 28, 103 S.Ct. 2841 ("[E]ven under § 301 we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract.").

## B. NLRA PREEMPTION

■ Defendant's alternative argument for removal in this case is that I should extend the holding in *Avco* to cases in which the plaintiff's claims are preempted by §§ 7–9 of the NLRA. The NLRA is a comprehensive federal regulatory scheme governing labor-management relations which preempts state regulation where the conduct regulated is arguably "protected or prohibited" by the Act. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).[4] However, the Supreme Court has

---

4. Defendant argues that the Plaintiff's causes of action are subject to *Garmon* preemption.

expressly declined to allow removal jurisdiction for purely state law claims that are preempted under *Garmon*.[5] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("The fact that the defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court."). Likewise, federal courts of appeals have held that the potential for *Garmon* preemption does not of itself provide grounds for removal from state to federal court.[6] *See Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 1000 (9th Cir.2007) (holding that *Garmon* preemption does not alone vest federal question jurisdiction); *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 277 (2d Cir.2005) ("Although the Supreme Court has not addressed the question, lower courts have uniformly held that defendants may not remove state claims to federal court by alleging *Garmon* preemption.") (quoting *TKO Fleet Enters. v. Dist. 15*, 72 F.Supp.2d 83, 87 (E.D.N.Y. 1999)); *Lontz v. Tharp*, 413 F.3d 435, 443 (4th Cir.2005) ("*Garmon* preemption under

the NLRA does not completely preempt state laws so as to provide removal jurisdiction.") (internal quotation omitted); *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1166 (10th Cir.2004) ("The rejection of Garmon preemption as a basis for removal is consistent with the Supreme Court's dicta in *Caterpillar*....."); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir.2004) ("*[Garmon]* pre-emption requires a court to yield primary jurisdiction over a given state-law claim to the NLRB, regardless of whether the claim was originally brought in federal or state court. However, it does *not* provide a basis for removal to federal court.") (emphasis in original).

## III.   REMAND TO STATE COURT

■ Despite the *Avco* corollary, plaintiffs remain "the master of the complaint" in most labor cases and may choose to bring their actions in state court if they are alleging state claims, even if their claims could be rephrased or defended as having federal labor law dimensions. In this case, as in *Caterpillar*, the state law

---

Sections 7, 8 and 9 of the NLRA directly protect the rights of employees who are represented by labor unions. Thus, they relate most directly to the rights, in this case, of the RN Unit with respect to the nurses' employer, not the rights of employee Gordon as against the Plaintiff. Nonetheless, Gordon's actions might arguably be proscribed (and thus preempted) by the NLRA. Sections 7–9 protect the rights of the nurses to elect their own "exclusive" representative, *see* 7, 9, without coercion by an agent of a labor organization, *see* § 8(b). Accordingly, Gordon might arguably have violated §§ 7–9 of the NLRA by acting as an agent of a competing labor organization and inappropriately influencing the exclusive representation by Plaintiff of the RN Unit. Although the complaint does not allege that Gordon "coerced" the RN Unit into electing Plaintiff's competitor as exclusive representative, the allegation that he inappropriately interfered with the prospective contractual relations of the Plaintiff and the Nurses Unit could conceivably be enough to

bring it within the scope of § 8(b) of the NLRA.

5.   *Garmon* itself, for example, arrived at the Supreme Court on appeal from the California state courts.

6.   Some federal courts, however, have neglected to address the impact of the well-pleaded complaint rule in this context and reached the merits of *Garmon* preemption on purely state law claims without discussing the issue of whether removal was proper. *See Pennsylvania Nurses Association v. Pennsylvania State Education*, 90 F.3d 797, 808 (3d Cir.1996) (holding that the NLRA preempts a state-law claim for deceit arising out of a dispute similar to Plaintiff's, but not the state-law claims for breach of fiduciary duty and defamation); *see also Williams v. Watkins Motor Lones, Inc.*, 310 F.3d 1070, 1073 (8th Cir.2002) (reaching the merits of *Garmon* preemption without discussing removal jurisdiction).

claims might be preempted by the NLRA. *See, e.g., Pennsylvania Nurses Association v. Pennsylvania State Education,* 90 F.3d 797 (3d Cir.1996) (holding that the NLRA preempts certain state law claims brought by a labor union against an allegedly faithless employee). But this potential for federal preemption is not sufficient to confer removal jurisdiction.

I have no authority to determine whether the NLRA preempts Plaintiff's alleged state law claims.[7] Thus, I leave the merits of this federalism question to the state court. If the state court in its examination of this question, for example, determines— as the NLRA directs, 29 U.S.C. § 157— that the proper and exclusive forum for initial adjudication of AFSCME's rights in this case is the NLRB, it may dismiss the matter as preempted by federal law. Such a decision might leave AFSCME with no recourse, because the statute of limitations for filing unfair labor practices claims under §§ 7–9 of the NLRA in the NLRB appears to have passed. *See* 29 U.S.C. § 160(b) ("[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made...."). In any event, the NLRA preemption issue and its implications are matters for state courts rather than the federal district courts to determine in the first instance, subject ultimately to discretionary review of such state court decisions by the Supreme Court of the United States under 28 U.S.C. § 1257.

### III. CONCLUSION

There being no complete federal preemption of the claims at issue and hence

no basis for removal jurisdiction, I remand the case to the Massachusetts Superior Court.

---

**7.** I do reach and reject the Section 301 complete preemption issue on the merits because the question of whether a federal forum would be the exclusive means to adjudicate Plaintiff's claims was a question properly before me for resolution as a jurisdictional matter.